UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**REVISED**

DANIEL RIAL,

      Petitioner,

  - against -

LEE RIJO,

      Respondent.

1:10-cv-01578-RJH

**MEMORANDUM OPINION AND ORDER**

Richard J. Holwell, District Judge:

This is a child removal action brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention"). The action was brought on February 25, 2010, whereafter the Court accepted written submissions from the parties and then held an evidentiary hearing from April 01-02, 2010. This memorandum opinion and order grants Mr. Rial's petition and orders return of the child to Spain, subject to certain undertakings to ensure her safety.

Petitioner and respondent moved to Spain in May 2005, two months after the birth of their daughter, D.R., who is the subject of this dispute. After being subjected to an abusive incident with Mr. Rial in December of 2009, Ms. Rijo decided that it was in her and her child's best interests to leave him and she absconded with D.R. to her family's residence in New York. Mr. Rial then brought this action seeking the return of D.R. back to Spain for custody proceedings. The Hague Convention requires the repatriation of an abducted child to its country of "habitual residence" in all but four exceptional circumstances. The only disputes here are whether Spain was the child's "habitual residence," and whether one of those exceptions (the "grave risk of harm" defense) applies.

**A. Habitual Residence**

The act only applies if a child is removed from its "habitual residence," and respondent contends that the child was not habitually resident in Spain.  A petitioner in an action brought under the Convention must prove this and the other elements of wrongful removal by a preponderance of the evidence.  42 U.S.C.A. § 11603(e)(1)(A).  A court determining habitual residence asks the following questions.  First, what was "the shared intent of those entitled to fix the child's residence (usually the parents) at the latest time their intent was shared[?]  In making this determination the court should look, as always in determining intent, at actions as well as declarations."  *Gitter v. Gitter*, 396 F.3d 124, 134 (2d Cir. 2005).  Second, does "the evidence unequivocally point[] to the conclusion that the child has acclimatized to the new location and thus has acquired a new habitual residence, notwithstanding any conflict with the parents' latest shared intent[?]"  *Id*.  Although intent is important, the facts of a child's residence may be undeniable: "[i]f at the relevant moment, a person has been living in one country … for a sufficiently long period" "questions as to the purpose of the residence become irrelevant."  *Gitter*, 396 F.3d at 12 (quoting E.M. Clive, *The Concept of Habitual Residence*, 1997 JURID. REVV. 137, 140).

The Court finds that D.R.'s habitual residence was Spain.  The couple moved her to Spain when she was just two months old, and although they may have intended to someday return to the US, they never did.  The life they planned in America was a future that year by year receded before them: they bought a house, then enrolled D.R. in school, then Ms. Rijo herself enrolled in school, then she applied for Spanish Citizenship.  And as time passed, D.R. came to be a Spanish-speaking five-year-old who had lived her entire life in Spain and knew nothing else.

The closest the family came to changing their residency was Mr. Rial's trip to the US from April to June of 2009. But whether or not he intended to find work at that time and to bring his family over, he did not find work and he returned to Spain where the family continued to live together, with no immediate plans to leave, until the child's abduction some six months later. The *Gitter* case, cited by respondent in support of her position, is materially distinct in an informative way: that child had lived fifteen months in the United States, then fifteen months in Israel, and then twelve months in the United States. *Gitter v. Gitter*, 396 F.3d 124, 128-129. D.R. lived two months in the United States, then fifty-four in Spain.

**B. Grave Risk of Harm**

Respondent objects to the petition because she contends that D.R. faces a grave risk of physical or psychological harm should she be returned to Spain. Removal under the Convention is inappropriate if there is a "grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, Article 13(b). The standard of proof for an abductor raising this defense is higher than that for the petitioner's burdens: "a respondent who opposes the return of the child has the burden of establishing…by clear and convincing evidence that one of the exceptions set forth in article 13(b) … applies." 42 U.S.C.A. § 11603(e)(2). The risk of harm necessary to support a 13(b) defense is "grave, not merely serious." *Friedrich v. Friedrich*, 78 F.3d 1060, 1068 (6th Cir. 1996). The Second Circuit has explained that the defense applies "in cases of serious abuse or neglect, or extraordinary emotional dependence." *Blondin v. Dubois*, 238 F.3d 153, 162 (2d Cir. 2001). Prior spousal abuse, though not directed at the child, can support the grave risk of harm defense. *Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000).

3

The evidence demonstrates that petitioner has been a verbally, and sometimes physically, abusive husband to Ms. Rijo. Ms. Rijo has testified that he frequently shouted at her, lost his temper, chastised her in front of others, and even said he would kill her. On a few occasions this abuse became somewhat physical: he would sometimes push her as he passed her in the house, or would "drag her" between rooms. D.R. was present for at least some of this abuse. While this level of abuse is less frequent and less severe than in other 13(b) cases, D.R.'s emotional dependence on Ms. Rijo is great and in the opinion of respondent's expert, Dr. Fixman, D.R.'s return to Spain in the sole custody of her father "would really put the child at very serious, serious risk." The Court does not understand Dr. Fixman's opinion to be a legal one regarding the test to be applied under 13(b) but rather a professional opinion that persuades the Court that the psychological trauma for D.R. would indeed be grave if she were separated from her mother.

"Necessarily, the 'grave risk' exception considers, *inter alia*, where and how a child is to be returned." *Id.* at 218. The Second Circuit has recognized the availability of undertakings, or promises by the petitioning parent, "to alleviate specific dangers that might otherwise justify denial of the return petition." *Blondin v. Dubois*, 238 F.3d 153, n. 8 (2d Cir. 2000) (quoting Carol S. Bruch, *The Central Authority's Role Under the Hague Child Abduction Convention: A Friend in Deed*, 28 Fm. L.Q. 35, 52 n. 41 (1994)). Several other courts have further recognized, even when a grave risk of harm is not present, that undertakings should be used "to ensure that a potential harm does not manifest when a child returns to his or her country of habitual residence." *See Krefter v. Wills*, 623 F. Supp. 2d 125, 138 (D.Ma. 2009) (quoting *Kufner*, 480 F. Supp. 2d at 515 n. 34 ("[W]here the potential for harm is real, even if it does not meet the Article 13(b) definitions, [a court] … has an obligation to attempt to ensure that it does not manifest"); *Feder v. Evans-Feder*, 63 F.3d 217, 226 (3d Cir. 1995) (if "an unqualified return order would be

detrimental," "the court should investigate the adequacy of undertakings … to ensure that [the child] does not suffer short term harm").  Simply, in many Hague Convention cases undertakings are "an important tool" for a court attempting to comply with the Convention's "strong presumption of a safe and speedy return" of an abducted child.  *Walsh*, 221 F.3d at 219.

As mentioned above, petitioner has agreed to a number of undertakings that the Court believes will ensure D.R.'s safe and speedy return to Spain.  Specifically, petitioner has agreed to rent an apartment in the center of town for six months, where both respondent and D.R. can feel secure upon their return to Spain.  Furthermore, petitioner has agreed not to press charges against Ms. Rijo for the abduction, and to pursue the dismissal of any charges that may have been brought.  In addition, petitioner shall pay child support in the amount of 500 euros/month for three months or until a Spanish court enters an order regarding support, whichever occurs earliest.  The parties will make arrangements for D.R. to spend ample time with her father once in Spain, or, failing agreement, as the Spanish court may order.  Based on these undertakings and conditions, the Court finds that the risk of harm to D.R. is not grave and grants Mr. Rial's removal request.[1]

---

[1] With respect to petitioner's request for costs and attorney's fees he is referred to Local Civil Rule 54.1.  *See Pesin v. Rodriguez*, 244 F.3d 1250, 1253 (11th Cir. 2001).

Mr. Rial is to obtain an apartment within 20 days of the entry of this order, and Ms. Rijo and the child are to return to Spain within 10 days thereafter. To address petitioner's legitimate concerns, respondents' counsel has agreed to escort Ms. Rijo and D.R. to the airport to ensure that they do indeed depart for Spain.

SO ORDERED.

Dated: New York, New York
April 21, 2010

Richard J. Holwell
United States District Judge